**DAVID M.C. PETERSON**
California State Bar No. 254498
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
david_peterson@fd.org

Attorneys for Mr. Fernandez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JOHN A. HOUSTON)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 08cr0802-JAH |
| Plaintiff, | ) ) ) | Date: June 13, 2008<br>Time: 8:30 a.m. |
| v. | ) | |
| JOSE JUAN FERNANDEZ, | ) ) ) ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MR. FERNANDEZ' SUPPLEMENTAL MOTIONS *IN LIMINE* |
| Defendant. | ) | |

TO:        KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
            PAUL STARITA, ASSISTANT UNITED STATES ATTORNEY

## I.

## Statement of Facts

On June 2, 2008, the government sent defense counsel an email stating that it was providing "notice" that at trial, ICE Agent Andrew Flood "may testify regarding the *modus operandi* of drug couriers, if Defendant attempts to raise the issue that Defendant was an "unknowing courier."[1] See Government Letter,

---

1 The notice does not state what Agent Flood will say *about* the *modus operandi* of drug couriers. However, in its Motions in Limine, the government expanded on this inadequate summary slightly, and sought a pre-trial ruling admitting expert testimony "(1) that drug traffickers typically do not entrust large amounts of drugs or money to unknowing couriers; and (2) that couriers, such as Defendant, do not typically participate in the loading or unloading of narcotics." See Clerk's Record at 15, Government Motions *In Limine* at 9. This motion proceeds on the assumption that the content will be that outlined in the Government's Motion *In Limine*.

1  attached hereto as Exhibit A.  The "notice" further states that "Agent Flood will base his opinions upon his

2  background, education, experience and training.  A copy of Agent Flood's qualifications is attached for your

3  review."  Id.[2]  This motion *in limine* follows.

4  **II.**

5  **The Proposed Expert Testimony Should Be Excluded: It Is Impermissible Under Ninth Circuit**
   **Precedents & Inapplicable Under The Facts of This Simple, Non-Conspiracy "Border Bust"**

6

7  In this extremely straightforward marijuana "border bust" trial, the government is seeking to

8  introduce through the backdoor the precise type of evidence that has been deemed irrelevant and prejudicial

9  by the Ninth Circuit, should Mr. Fernandez present any defense.[3]  See Response and Opposition to the

10  Government's Motions *In Limine* at 5-9.  The government simply seeks to put up an "expert" to testify as to

11  what Mr. Fernandez' mental state must have been, since "unknowing couriers typically do not entrust large

12  amounts of drugs or money to unknowing courers."  In addition, the government is seeking to do so through

13  an unqualified expert under Rule 702, without following even the most basic requirements of Rule 16.  As

14  such, the testimony of the agent should be precluded.  If the court is inclined to deny this motion, Mr.

15  Fernandez requests a pre-trial hearing on the government's so-called expert's qualifications under Daubert

   and Kumho.

16  **A.**      **The Court Should Exclude the Testimony of the Structure Expert Based on**
            **The Government's Failure to Provide Adequate Notice or Discovery.**

17

18  The proffered structure/modus operandi testimony should be precluded based on the

19  government's failure to provide adequate notice or any discovery.  The only "discovery" the government has

20  produced regarding the proposed structure expert is a letter, dated June 2, 2008, providing the names and

21  qualifications of an "expert."  The letter sets forth, over three single-spaced, pages, a list of experiences Agent

22  Flood has had with un-named, undisclosed "drug distributors."  See Agent Flood CV, Exhibit B.  Yet the

23  letter fails to set forth even a single basis for the proposed opinions and *discloses no facts, data, reports,*

24  *investigatory materials, or other information underlying the so-called expert's opinions*.  Cf. Fed.R.Crim.P

25  16(a)(1)(G) (requiring disclosure of a summary of opinion of expert and "the bases and reasons for those

26  _____

    2 The three-page summary of Agent Flood's experience is attached hereto as Exhibit B.

27  3 The government seeks admission should Mr. Fernandez imply that he did not know the drugs in

28  the car he crossed in "during opening statement, cross-examination, or Defendant's case-in-chief."

opinions"); Fed.R.Evid. 702 (requiring expert testimony to be "based upon sufficient facts or data." The government's inadequate notice does not constitute discovery, and the government has, in fact, provided no discovery.

Given the inadequate notice and discovery, the government's proposed testimony should be precluded. Federal Rule of Criminal Procedure 16, the Supreme Court's decisions in Daubert v. Merrell Dow Pharmaceuticals, Inc, 509 U.S. 579 (1993), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999), the related Federal Rules of Evidence dealing with expert testimony, the Fifth and Sixth Amendment concerns, and pragmatic principles all make clear that it must provide adequate notice and discovery.

In the en banc case of United States v. Fort, 472 F.3d 1106, 1121 (9th Cir. 2007), the Ninth Circuit stated that "materials on which a proposed expert witness relies [in developing his opinions] must be produced to Defendants in discovery." This is so even if the materials would otherwise be protected under the federal rules. Id. The government must disclose the bases underlying its proposed expert's testimony, including "written and oral reports, tests, reports, and investigations," as well as "any [other] information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." Fed. R. Crim. Pro. 16, Advisory Comm. Notes, 1993 Amendment, ¶ 5.

The requirement of adequate discovery "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merits of the expert's testimony through focused cross examination." Id. at ¶ 1. The rule has the additional benefit of providing counsel with the substantive information necessary to conduct a thorough and useful Daubert/Kumho / Rule 702 inquiry, which, in turn, assists the Court in performing its gate-keeping function. In the case of a criminal defendant such as Mr. Fernandez, the rule serves the additional purpose of safeguarding the defendant's Fifth and Sixth Amendment rights to a fair trial and meaningful cross-examination. U.S. Const. Amends. V, VI.

## 1.    Rule 16's Notice Requirement Has Not Been Met.

Here, the government has not provided anything approaching the notice and discovery required by Rule 16, as they have not disclosed what the testimony will be, nor produced the requisite summary, nor provided any of the information upon which the testimony will be based.

First, the government must provide: "a written summary of any testimony that the government intends to use under Rules 702, 703 or 705." See Rule 16(a)(1)(G). The government has provided no such summary. The government has simply provided notice that Agent Flood "may testify regarding the modus operandi of drug couriers," see Exh. A, and a description by Agent Flood of some training he has had, and conclusory assertions that he has, based on training and experience become"familiar with the techniques and methods of drug distributors." Exh. B. In the notice, there simply is no summary of what his testimony will be, thus the defense is left speculating as to what the testimony will be, in clear contravention of Rule 16(a)(1)(G), and the dictates of Rule 702.

Second, the government has not provided the required information describing "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed.R.Crim.P. 16(a)(1)(G). While the government has provided a pro forma description of Agent Flood's qualifications, which should be subjected to a Daubert hearing, the have not provided 1) agent Flood's opinions, 2) the bases for those opinions, or 3) the reasons for those opinions. Id. Here Agent Flood, will rely upon: his own cases, cases he assisted with, interviews with smugglers and informats, contact with undercover agents and operations, ongoing communications with fellow agents and other law enforcement personnel, literature, publications, seminars and courses, along with formal training. Every one of the arrests, every case of his own, every interview he claims to be relying on, and every communication must be provided to defense counsel. In addition, all publications and training materials should be provided. Finally, the seminars, courses, and training should be identified.

Federal Rule of Criminal Procedure 16(a)(1)(G) plainly requires the government to disclose the "bases and reasons for [the witness's] opinions." Fed. R. Crim. P. 16(a)(1)(G). This disclosure is separate and in addition to disclosure of a summary of "the witness's opinions" and "the witnesses qualifications," which the rule also requires. Fed. R. Crim. P. 16(a)(1)(G). When the rule was amended in 1993 to expand the scope of Rule 16(a)(1)(G) to require "disclosure of the intent to rely on expert opinion testimony, what the testimony will consist of, and the bases of the testimony," Fed. R. Crim. Pro. 16, Advisory Comm. Notes, 1993 Amendment, ¶ 1 (emphasis added), the Advisory Committee addressed the constitutional and pragmatic concerns undergirding the amended rule:

> The amendment is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merits of the experts' testimony through focused cross-examinations.

Id. Importantly, the Advisory Committee specified precisely what the rule means by "bases of the testimony" to ensure that the rule would have the intended effects:

> Third, and perhaps most important, the requesting party is to be provided with a summary of the bases of the expert's opinion. . . . . Without regard to whether a party would be entitled to the underlying bases for expert testimony under other provisions of Rule 16, the amendment requires a summary of the bases relied upon by the expert. That should cover not only *written and oral reports, tests, reports and investigations*, but *any information* that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts.

Federal Rule of Criminal Procedure 16, Advisory Comm. Notes, 1993 Amendment (emphasis added). In other words, the party proffering the expert must provide substantive and comprehensive discovery—the discovery necessary to give the "opponent . . . a fair opportunity to test the merits of the expert's testimony through focused cross examinations (including "written and oral reports, tests, reports, and investigations" where applicable). The three-page summary of Agent Flood's experience that the government has disclosed in this case does not satisfy the rule. See, e.g., United States v. Zanfordino, 833 F. Supp. 429, 432-33 (S.D. N.Y. 1993) (granting the defense's request for complete discovery regarding the bases of the expert's testimony under Rule 16 , noting that a cross examination conducted without that information implicated due process and the Confrontation Clause, and detailing why a narrow view of the expert disclosure rules is constitutionally suspect).

### 2. Rules 702, 703, 705, and *Daubert* and *Kumho* Require Comprehensive Disclosure of the Bases of the Proposed Expert's Opinion; No Such Disclosure Has Occurred.

Mr. Fernandez has already stated that before any structure/unknowing courier testimony be introduced, he requests a hearing under Daubert and Kumho. See Response and Opposition to Government Motions *In Limine* at 6. The Ninth Circuit has found such a hearing necessary in cases similar to this one. United States v. Hermanek, 289 F.3d 1076, 1094 (9th Cir. 2002). To ensure a meaningful hearing, as well as to comply with the strictures of Rule 16, the government must provide the proper notice and discovery. Government Compliance with Rule 16 ensures that the parties have the information they need to assist the Court in exercising its gate-keeping role, as required by the rules and the Supreme Court's decisions in Daubert and Kumho. The government has not done so, in spite of Mr. Fernandez' request dating back to April 7, 2008. See Defendant's Motion to Compel Discovery, filed 04/07/2008, Clerk's Record at 9.

Here, the proffered structure/modus-operandi testimony is admissible only if it satisfies the strictures of Rule 702—namely: 1) the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"; 2) the expert is qualified by "knowledge, skill, experience, training, or education"; 3) "the testimony is based upon sufficient facts or data"; 4) "the testimony is the product of reliable principles and methods"; and 5) "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; see also Kumho, 526 U.S. at 147 ("Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable'" (quoting Daubert, 509 U.S. at 589)). In Kumho, the Supreme Court made clear that this inquiry applies, not only to "scientific" testimony, but also to testimony based on specialized knowledge, such as the testimony the government proposes here. Id. at 150-52. The government has proffered nothing to indicate that its proposed experts' testimony will satisfy any of these tests. Thus, the evidence should be precluded.

Before the Court can admit expert testimony under Rule 702, it must ensure itself that 1) the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"; 2) the expert is qualified by "knowledge, skill, experience, training, or education"; 3) "the testimony is based upon sufficient facts or data"; 4) "the testimony is the product of reliable principles and methods"; and 5) "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; see also Kumho, 526 U.S. at 147 ("Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony ... is not only relevant, but reliable'" (quoting Daubert, 509 U.S. at 589)). In Kumho, the Supreme Court made clear that this inquiry applies, not only to "scientific" testimony, but also to testimony based on specialized knowledge, such as the testimony the government proposes here. Id. at 150-52.

Furthermore, a court evaluating whether proposed "specialized knowledge" testimony has a reliable basis under Daubert and Kumho must look beyond "bare qualifications" and an expert's conclusions to the facts, reasoning, and methodology behind the conclusions. Hermanek, 289 F.3d at 1094. In Hermanek, for example, the Ninth Circuit held that the district court erroneously admitted the testimony of a government expert called to interpret coded drug conversations where "[t]he district court relied solely on [the expert's] general qualifications without requiring the government to explain the method [the expert] used to arrive at

his interpretations of words he had never encountered before." Id. at 1094. The Ninth Circuit found inadequate the expert's generic reliance on his experience, stating: "The factors [the expert] identified—his knowledge and prior investigation of defendants and the 'evidence seized' in the case—were too vague and generalized to satisfy the requirements of Rule 702." Id.[4] By the same token, the government's proffered expert here must "'explain the reasoning and methods underlying [his] conclusions,'" id. (quoting Claar v. Burlington N. R.R. Co., 29 F.3d 499, 502 (9th Cir. 1994), and "explain in ... detail the knowledge, investigatory facts and evidence he [is] drawing from," id., before the Court can admit his testimony.

At this point, the government has not even provided Mr. Fernandez with an indication of what its expert's opinions will be. Further, it has provided no information regarding the "facts or data" underlying its expert's opinions, making it impossible for Mr. Fernandez to investigate whether the proposed testimony is "based upon sufficient facts or data." Fed. R. Evid. 702. Finally, the government provided Mr. Fernandez with no information about the "principles and methods" on which its expert has relied, let alone discovery that would allow Mr. Fernandez to investigate whether "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

In the end, the government's "disclosure" of an informal resume of the proposed expert does not begin to answer the key question driving the admissibility of its proposed expert's opinions: 1) What is the expert's opinion?  2) What separates the proposed expert's opinions from the opinions based on "subjective belief and unsupported speculation" that Daubert forbids? See Daubert, 509 U.S. at 589-90. Rule 702 and Supreme court case law make clear that the government will have to divulge this information to demonstrate that is expert meets the evidentiary requirements. Rule 16 requires these disclosures sooner rather than later. And until and unless the government satisfies its obligations under Federal Rule of Criminal Procedure 16, and Federal Rule of Evidence 702, the testimony must be precluded.

### 3.    Brady Requires Disclosure Of Unknowing Courier Cases By the Government.

The government is deemed to have knowledge of cases where unknowing couriers have existed. Such cases must be disclosed to the defense as it is impeachment material directly contrary to the possible opinions of its expert. See Brady v. Maryland, 373 U.S. 83 (1963). Members of this office are, of

---

4Indeed, these are precisely the type of "qualifications" identified in the three-page summary of Agent Flood's experience.

course, aware of instances where an individual has denied knowledge that the drugs were in the car, and has either been found not guilty or the government has dismissed the case. Further, there are numerous cases in which a co-occupant of a vehicle has exonerated another person in the vehicle. The government's <u>Brady</u> obligations require them to produce reports of debriefing sessions, safety valve or cooperation sessions and reports arising therefrom, involving cases where two occupants were in a car and one did not know of the presence of drugs. Finally, of course, multiple people accused of being couriers are acquitted every year in our courtrooms. Juries in this district indicate that there are unknowing couriers.

Further, a diligent search of the government's files undoubtedly would turn up cases where a person explained that they were an unknowing courier at the time of their arrest for importation of marijuana, and was later acquitted or the charges were dismissed. All of these cases, the "deny knowledge" statements given at the border, and the government dismissals or jury verdicts of not guilty are all <u>Brady</u>, they are in the possession of the government, and they must be turned over.

### 4.    The Fifth and Sixth Amendments Require Sufficient Notice and Comprehensive Disclosure of the Bases of the Proposed Expert's Opinion.

Finally, in the case of a criminal defendant like Mr. Fernandez, Rule 16's notice requirement safeguards are rooted in important constitutional rights that would be eviscerated were the government allowed to put on expert testimony without giving the defense a meaningful opportunity to test the proposed evidence, thoroughly investigate its validity, and respond. The constitutional due process guarantee of a fair trial confers a meaningful opportunity to present a complete defense. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302, 93 S.Ct. 1038 (1973). <u>See also</u> <u>Washington v. Texas</u>, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923 (1967) (The right "to offer testimony" is "basic in our system of jurisprudence"). The Sixth Amendment right of an accused to confront the witnesses against him includes the opportunity for adequate and effective cross-examination. <u>Davis v. Alaska</u>, 415 U.S. 308 (1974). <u>See</u>, <u>e.g.</u>, <u>United States v. Brooke</u>, 4 F.3d 1480, 1489 (9th Cir. 1993) ("We cannot overemphasize the importance of allowing full and fair cross-examination of government witnesses whose testimony is important to the outcome of the case."). Of course, these guarantees are meaningless if the government can put on expert testimony with an unknown—and therefore unassailable—factual basis and methodology. As the Ninth Circuit recently recognized, "'[t]he *central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant*

*by subjecting it to rigorous testing* in the context of an adversary proceeding before the trier of fact.'" <u>Murdoch v. Castro</u>, 365 F.3d 699, 702 (9th Cir. 2004) (emphasis in original) (quoting <u>Maryland v. Craig</u>, 497 U.S. 836, 845, (1990). Additionally, "[o]ne longstanding purpose of cross examination is to expose to the fact-finder relevant and discrediting information." <u>Id</u>. Because only comprehensive discovery regarding the bases of the proposed expert's opinions will allow Mr. Fernandez to subject the proposed testimony to "rigorous testing" and "expose to the fact-finder relevant and discrediting information," only comprehensive discovery regarding the bases of the proposed expert's opinions will allow Mr. Fernandez to exercise his constitutional rights.

In <u>United States v. Zanfordino</u>, 833 F. Supp. 429 (S.D. N.Y. 1993), the defense requested discovery regarding the basis of the expert's testimony. The district court granted the request, noting that a cross examination conducted without that information implicated due process and the Confrontation Clause. <u>Id</u>. at 432-33. "If an expert is testifying based in part on undisclosed sources of information, cross-examination vouchsafed by that Clause would be unduly restricted." <u>Id</u>. Federal Rule of Criminal Procedure 16, <u>Jencks</u>, and Federal Rule of Evidence 705. <u>Id.</u> at 432-33.[5] Rule 16 requires disclosure of "the bases and reasons for [the expert's] opinions." Fed. R. Crim. P. 16(a)(1)(E). The Federal Rules of Evidence impose a similar requirement: "[t]he expert may in any event be required to disclose the underlying facts or data on cross-examination." Fed. R. Evid. 705. As the <u>Zanfordino</u> court observed, "delaying such disclosure until [cross examination] would merely prolong the trial." 833 F.Supp. at 433. Information relied upon by an expert is clearly <u>Jencks</u> material, particularly when the information takes the form of reports written or adopted by the expert. <u>See</u> 18 U.S.C. § 3500(a), (e)(1); <u>see</u> <u>also</u> Fed. R. Civ. P. 26(b)(4) (adversary may obtain information to be relied upon by the expert).

Here, the proposed expert would rely upon materials not yet produced to the defense, including reports and various reference materials. All of this information must be produced. "If an expert is testifying based in part on undisclosed sources of information, cross-examination vouchsafed by [the Confrontation] Clause would be unduly restricted." <u>Zanfordino</u>, 833 F. Supp. at 432. Mr. Fernandez' right to confront and

5 The government may argue that the amount of material it is obligated to produce might be large. Even so, the fact that the material may be voluminous is not a basis for declining to order the necessary disclosure. <u>See</u> <u>United States v. Roark</u>, 924 F.2d 1426, 1430-32 (8th Cir. 1991); <u>United States v. Allen</u>, 798 F.2d 985, 1000 (7th Cir. 1986).

cross examine the witnesses, guaranteed by the Sixth Amendment and effectuated by the discovery rules, will not merely be "unduly restricted" absent disclosure of the bases of the opinions, it will be eviscerated. Because trial is fast approaching, and no discovery has been provided, any experts the government proposes should be excluded.[6]

The unique posture of this case makes complete expert discovery particularly material to Mr. Fernandez' defense. Unless the government has additional evidence it has not yet disclosed to the defense, it appears that the government's proposed expert testimony will be a cornerstone of its case. Mr. Fernandez invoked at the time of his arrest. The government has produced in discovery records of prior crossing of the truck that do not match any crossings by Mr. Fernandez. Thus, there are clearly other individuals implicated in this case.

**B.**    <u>**Relevance**</u>

The proffered structure/modus-operandi testimony should be precluded on the additional ground that the government has failed to establish the testimony's relevance under Federal Rules of Evidence 401, 402, and 403. In <u>Daubert v. Merrell Dow Pharms, Inc.,</u> 509 U.S. 579, 591 (1993), the Supreme Court stressed that expert testimony must have a valid connection to the issues presented. <u>See also</u> Fed. R. Evid. 401, 402, 403 (only relevant evidence is admissible). Furthermore, "[w]hen the relevance of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence of sufficient to support a finding of the fulfillment of the condition." Fed. R. Evid. 104(b).

Unknowing courier and other types of structure testimony have been subjected to, and failed, the relevance test that is the most basic requirement for admissibility. <u>United States v. Vallejo</u>, 237 F.3d 1008, 1017 (9th Cir. 2001) (expert's "testimony concerning the structure and modus operandi of drug trafficking organizations <u>was not relevant</u> to the Government's case against Vallejo"); <u>United States v. Pineda-Torres</u>, 287 F.3d 860, 864 (9th Cir. 2002) (structure-type testimony not relevant to prove knowledge in a straightforward border-bust case); <u>see also</u> <u>United States v. Varela-Rivera</u>, 279 F.3d 1174, 1179 (9th Cir.2002) (expert testimony about the structure of drug trafficking organizations was irrelevant and prejudicial in a border courier case and therefore inadmissible under Federal Rules of Evidence 401 and 403).

---

6 The government must identify when or where any of its proposed experts have testified.

The proposed testimony only is relevant if it tends to prove the existence of a fact at issue, Fed. R. Evid. 401—for example, that Mr. Fernandez knew the narcotics were in the car. However, the government has proffered nothing to suggest that the structure expert's generalized knowledge regarding narcotic trafficking organizations has any link whatsoever to Mr. Fernandez, let alone to Mr. Fernandez' knowledge of the narcotics or to another fact of consequence in this case. Before the government's expert can opine regarding drug trafficking in general, the Court must assure itself that the testimony has a valid connection to Mr. Fernandez' case beyond giving the prosecutor a mouthpiece for his prosecution theory. Thus, Mr. Fernandez' requests that the court conduct a Rule 104 preliminary question hearing before trial to determine whether there are sufficient facts linking the expert's as-yet-undisclosed testimony to this case. If the government's sole purpose is to use the expert testimony to prove knowledge, and counter any defense of lack of knowledge, it must be excluded under the holdings of <u>Vallejo</u>, 237 F.3d at 1017; <u>Pineda-Torres</u>, 287 F.3d 864; and <u>Varela-Rivera</u>, 279 F.3d at 1179.

**C.      Rule 403 Dictates That the Testimony Should Be Excluded.**

Finally, the Court should preclude the proffered structure/modus-operandi testimony because its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. In the end, the government's proffered testimony is little more than the prosecutor's theory of the case trumpeted by a witness imbued with "expert" status. The only reference to the substance of the testimony is in the government's motion in limine. There they state that the testimony will be (1) "that drug traffickers typically do not entrust large amounts of drugs or money to unknowing couriers" and that (2) "couriers, such as Defendant, do not typically participate in the loading or unloading of narcotics."

As to (2), whether Mr. Fernandez did or did not load the narcotics is irrelevant. This is in essence, an attempt to undermine a "fingerprint" defense that is not being made. <u>United States v. McGowan</u>, 274 F.3d 1251, 1254 (9th Cir. 2001).

As to (1), the testimony is both irrelevant, because it does not state anything relevant to how the marijuana ended up in the car, and it does not provide any indication of mental state (other than an improper inference as to the ultimate fact to be decided). Thus, it is not only irrelevant and must be excluded under Rule 402, it is highly prejudicial under 403.

1    The testimony falls only a hair short of the government's expert stating that, in his expert

2    opinion, Mr. Fernandez is a "drug courier[ ]" working with a "drug-smuggling organization[ ]." Of course,

3    this is the issue for the jury to decide in this case.  See Fed. R. Evid. 704.  To acquit Mr. Fernandez, the jury

4    will have to disagree with the government's expert.  It is hard to imagine what "evidence" would be more

5    prejudicial, confusing, or misleading than the testimony that in the experience of an agent, Mr. Fernandez

6    must have known the drugs were in the car, because the agent is saying that any other story (namely, any

7     defense Mr. Fernandez presents) would be implausible.  The testimony should be excluded.

8    **D.        Rule 704 Dictates That the Testimony Should Be Excluded.**

9    The government has no physical evidence tying Mr. Fernandez to the drugs found in the

10   vehicle, beyond the fact that they were found there in a well-hidden compartment.  Under these

11   circumstances, the government has no choice but to rely on seemingly innocuous circumstantial evidence.

12   According to the limited notice provided, the government's proposed expert will simply testify that drug

13   smugglers do not use unknowing couriers.  As such, it is direct testimony on the mental state of Mr.

14   Fernandez, prohibited under Federal Rule of Evidence 704(b) ("No expert witness testifying with respect to

15   the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether

16   the defendant did or did not have the mental state or condition constituting an element of the crime charged

17   or of a defense thereto") (emphasis added)  The Ninth Circuit has held that Rule 704(b) prohibits expert

18   witnesses from commenting upon the mental state of a defendant in a criminal case where the mental state

19   constitutes an element of the offense.  United States v. Morales, 108 F.3d 1031, 1037 (9th Cir. 1997) (en

20   banc).

21   Of course, since knowledge is at issue in this case, and will likely be the sole issue in this case,

22   the government is doing nothing if not offering up an inference based upon the view of an "expert" as to the

23   likelihood of a particular mental state of Mr. Fernandez.

**XI.**

**CONCLUSION**

26   For the foregoing reasons, Mr. Fernandez respectfully requests that this Court grant these

27   motions in limine, as well as these other motions for trial.

Respectfully submitted,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: June 5, 2008

s/ *David M.C. Peterson*
**DAVID M.C. PETERSON**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Fernandez
david_peterson@fd.org